UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

| | |
|---|---|
| ROGER TEJON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZEUS NETWORKS, LLC,<br><br>Defendant. | Action No.: 1:24-CV-20498<br><br>Honorable Paul C. Huck |

**DEFENDANT ZEUS NETWORKS, LLC'S MOTION TO COMPEL ARBITRATION**

Defendant Zeus Networks, LLC ("Zeus"), moves to compel this case to individual arbitration. Plaintiff Roger Tejon alleges he has an account with Zeus that enables him to watch video content on Zeus's video streaming platform service. He alleges Zeus disclosed his video viewing information in connection with his Facebook ID number to Facebook through the Meta Pixel allegedly enabled on the Zeus website without his written consent in violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. [Docket Entry ("DE") 1, ¶¶ 1, 3-6]. Plaintiff seeks to represent a nationwide class. [DE 1, ¶ 39]. Zeus moves to compel arbitration because the parties have an arbitration agreement. The existence of the arbitration agreement is demonstrated through the Declaration of Shane Norman ("Norman Decl.") filed in support of this motion. The arbitration agreement renders this court an improper forum for the dispute which should be resolved on an individual basis in arbitration.

**MEMORANDUM OF LAW**

## I. STATEMENT OF RELEVANT FACTS AND SHANE NORMAN'S DECLARATION

Plaintiff alleges Defendant Zeus Networks, LLC ("Zeus") "operates a website (www.thezeusnetwork.com) that offers prerecorded videos to individuals who subscribe to Defendant's services." [DE 1, ¶ 17]. Plaintiff alleges he "became a digital subscriber by registering for an account with Defendant and providing personal identifying information at the time of registration." [DE 1, ¶ 18]. "Plaintiff's registration reflected a commitment by Plaintiff

and granted Plaintiff access to restricted video content offered by Defendant." [DE 1, ¶ 20]. Plaintiff alleges he has resided in Florida at all relevant times. [DE 1, ¶ 8].

Plaintiff opened a Zeus account on November 1, 2023 using an iOS device. Norman Decl. ¶ 7. "Zeus offers an annual subscription for $59.99 and a monthly subscription for $5.99 per month." Norman Decl. ¶ 6. "When Plaintiff registered for an account with Zeus using an iOS device, he was required to choose between the annual subscription plan or monthly subscription plan by clicking a button for one or the other." Norman Decl. ¶ 9. "Beneath the annual subscription and monthly subscription buttons would have been language stating: 'By subscribing, you agree to our Terms of Service & Privacy Policy and represent that you are at least 16 years of age. Zeus will charge the membership fee to your iTunes account on a recurring basis until you cancel. Payments will continue unless you deactivate at least 24-hours prior to the end of the current cycle. You can auto-renew in your iTunes account settings.'" Norman Decl. ¶ 9, Ex. A.



The underlined text highlighting "Terms of Service" and "Privacy Policy" provides hyperlinks to each of those documents. Norman Decl. ¶ 9, Ex. A. To open an account, Plaintiff had to click either the red "$59.99 / year Pay annually" button or the red "$5.99 / month Pay monthly" button confirming his agreement to these terms. Norman Decl. ¶ 9. Plaintiff selected a monthly subscription for $5.99 per month. Norman Decl. ¶ 8.

The "Terms of Service" hyperlink button opened the Zeus webpage at https://www.thezeusnetwork.com/tos for the "Vimeo OTT Viewer Terms of Service Agreement" (Norman Decl. ¶¶ 9-10, Ex. B), which states:

> # Vimeo OTT Viewer Terms of Service Agreement
>
> Last updated: May 24, 2021
>
> This Vimeo OTT Viewer Terms of Service Agreement ("**Agreement**") is between you and Vimeo.com, Inc. (for the purposes hereof, "**Vimeo**," "**we**" or "**us**"). The Agreement governs your use of the "**Vimeo OTT Service**," an online platform that allows consumers like you to view video programs ("**Programs**") from content owners and licensors ("**Producers**") through Producer-branded websites and applications that we power.
>
> **Notice:** Section 10 of this Agreement contains a mandatory **ARBITRATION AGREEMENT.** By using the Vimeo OTT Service, you agree that any claims you may have against Vimeo relating to the Vimeo OTT Service must be **ARBITRATED,** and you waive the right to (1) assert claims against Vimeo in court; (2) participate in a class action; and (3) have a jury hear your case.
>
> ## 1. Acceptance
>
> By creating an account, viewing videos, making a purchase, downloading Producer-branded applications that we power, or otherwise visiting or using the Vimeo OTT Service, you accept this Agreement and consent to contract with us electronically.

Norman Decl., Ex. B at 1.

The Terms of Service state at Section 10.7:

> ### 10.7 Binding Arbitration with Producers
>
> To the extent that the Producer has agreed to resolve disputes with consumers through arbitration in its agreements with Vimeo, you agree that any dispute with a Producer arising out of or relating to your purchase or viewing of a Producer's Program or subscription channel shall be resolved by BINDING ARBITRATION administered by JAMS in accordance with this Section 10.

Norman Decl., Ex. B at 13.

The preceding portion of Section 10 of the Terms of Service state:

## 10. Arbitration Agreement; Jury Waiver; Class Action Waiver

This Section 10 sets forth a binding arbitration agreement between you and Vimeo (the "**Arbitration Agreement**"). In this Arbitration Agreement, you agree:

- To arbitrate all claims relating to the Vimeo OTT Service;
- To waive your right to a trial by jury; and
- To waive any right to proceed on a class basis in arbitration or otherwise.

### 10.1 Arbitration Agreement

The exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or your use of the Vimeo OTT Service shall be BINDING ARBITRATION administered by JAMS pursuant to its Streamlined Arbitration Rules & Procedures as modified by our Arbitration Procedures.

### 10.2 Overview

Arbitration provides a private dispute resolution process that is usually more streamlined and less formal than litigation. In an arbitration, your rights will be determined by a neutral third party called an arbitrator, and not a judge or jury. Both you and Vimeo are entitled to fundamentally fair proceedings at every stage of the arbitration, including the hearing (if any). The arbitrator will decide all issues relating to the dispute, including the question of arbitrability, and can grant any relief that a court could grant. Decisions by the arbitrator are enforceable in court and may be overturned by a court only for very limited reasons. For details on the arbitration process, see our Arbitration Procedures.

### 10.3 Location of Hearing

If you are a consumer, as defined by JAMS in its Consumer Minimum Standards, you may request that the arbitration hearing be conducted in the area in which you reside. Otherwise, the hearing (if any) shall take place in New York County, New York State, United States of America.

### 10.4 Class-Action Waiver

EACH PARTY WAIVES ITS RIGHT TO GO TO COURT, TO A TRIAL BY JURY, AND TO PARTICIPATE IN A CLASS ACTION, CLASS ARBITRATION, OR OTHER REPRESENTATIVE PROCEEDING WITH RESPECT TO ANY CLAIM SUBJECT TO ARBITRATION.

### 10.5 Exception for Small Claims Court Matters

Notwithstanding the above, each party has the right to bring an individual claim against the other in a small claims court of competent jurisdiction pursuant to Rule 1 of JAMS' Consumer Minimum Standards. If one party files an arbitration that could be litigated in such a small claims court, the responding party may request that the dispute proceed in small claims court. If the responding party requests to proceed in small claims court before the appointment of the arbitrator, the arbitration shall be administratively closed. If requested after the appointment of the arbitrator, the arbitrator shall administratively close the arbitration so long as the proceedings are at an early stage and no hearing has occurred.

### 10.6 Jurisdiction and Venue

The Federal Arbitration Agreement ("**FAA**") shall govern this Arbitration Agreement. To the extent not preempted or inconsistent with the FAA, the choice of law provisions in Section 11 are incorporated and are applicable to this Arbitration Agreement. Any arbitration award may be entered in a court of competent jurisdiction.

Norman Decl., Ex. B at 11-13.

The Terms of Service under the "General Provisions" Section 11 include:

> **No Third Parties:** No third parties shall have any rights under this Agreement, except that Producers may enforce the terms herein against you, and indemnified parties may enforce indemnification rights.

Norman Decl., Ex. B at 14.

The "Privacy Policy" hyperlink available above the "Start subscription" button opened the Zeus webpage for the "Privacy Policy" (Norman Decl. ¶¶ 9, 11, Ex. C), which includes:

> # PRIVACY POLICY
> Last updated: Mar 30, 2021
> **Zeus Network Privacy Policy**
> This is the Privacy Policy of Zeus Network (hereafter referred to as "**us**" or "**we**"). This Privacy Policy describes how your personal information is collected, used, and shared when you use our streaming service, Zeus Network through our website https://www.thezeusnetwork.com or any of our branded apps (together, the "**Service**").
> …
> **DISCLOSURES TO THIRD PARTIES**
> We may disclose your information to the following types of third parties:
> **Authorized Service Providers**
> We share your information with authorized service providers involved in operating the Service. For example, we use Vimeo OTT to power the Service and provide customer support.

Norman Decl., Ex. C at 1, 2.

On February 8, 2024, Plaintiff filed a putative class action alleging violation of the VPPA. He alleges he had a Facebook account and used his "digital subscription to view prerecorded video content on Defendant's website while logged into the Facebook account." [DE 1, ¶ 22]. Plaintiff alleges Zeus "embedded and deployed a 'Meta Pixel' on its website," which "transmits a consumer's website activities to Facebook even if the Facebook application is running in the background of the consumer's computer" as "Off-Facebook activity." [DE 1, ¶¶ 24-28]. Plaintiff alleges the Meta Pixel was configured to send a user's Facebook ID number, or FID, along with the name of a video requested and/or viewed by the user from the Zeus website to Facebook. [DE 1, ¶¶ 29-31]. Plaintiff alleges Zeus "did not disclose to Plaintiff and the Class Members that it was sharing their Personally Identifiable Information with Facebook." [DE 1, ¶ 34].

While Zeus denies Plaintiff's allegations, his claim must be resolved through individual arbitration pursuant to the Terms of Service he affirmatively assented to when he subscribed to a Zeus account to receive the video services at issue.

## II. THE COURT SHOULD COMPEL ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., applies and requires arbitration of this action. "The 'principal purpose' of the FAA "is to ensure that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("*Concepcion*"). State law rules that hinder arbitration, including refusal to enforce class action waivers, are pre-empted by the FAA. *Id.* at 344-52. The FAA "…afford[s] parties discretion in designing arbitration processes [] to allow for efficient, streamlined procedures … [a]nd the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of the dispute resolution." *Id.* at 344-45.

### A. <u>The Federal Arbitration Act Applies</u>

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving [interstate] commerce." 9 U.S.C. §§ 1, 2. The Arbitration Agreement satisfies both requirements. The subscription offer Plaintiff accepted by completing and submitting his account subscription was in writing as is the Terms of Service document Plaintiff agreed to when he subscribed. Plaintiff resided in Florida when he subscribed to an account with Zeus, which has its principal place of business in California. [DE 1, ¶¶ 8-10, 18]. Therefore, Plaintiff's Zeus subscription evidences a transaction involving interstate commerce and the FAA applies.

The FAA reflects an "emphatic federal policy *in favor of* arbitral dispute resolution." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (emphasis added). The Eleventh Circuit "recognized that the FAA creates a 'presumption of arbitrability' such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (citations omitted). The presumption does not apply to whether an arbitration agreement exists as that is a matter of contract. *Id.* The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration…" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The Eleventh Circuit "treat[s] motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Communs., LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citation omitted). Under the FAA, the factors a court considers when deciding whether to compel arbitration include: "(1) whether a valid written agreement to arbitrate exists, (2) whether an

arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Hilton v. Fluent*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (citation omitted).

B. <u>A Valid and Enforceable Written Arbitration Agreement Exists</u>

"Federal law establishes the enforceability of arbitration agreements, while state law governs the interpretation and formation of such agreements." *Emplrs. Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001) (citation omitted). "Florida applies the doctrine of *lex loci contractus* to issues involving matters of contract." *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1259 (S.D. Fla. 2021) (citations omitted). "*Lex loci contractus* 'provides that the law of the jurisdiction where the contract was executed governs interpretation of substantive issues regarding the contract.'" *Id.* There is a choice of law provision in the Terms of Service that elects New York law will govern. Norman Decl, Ex. B at 14. If Plaintiff disputes that a contract including the Terms of Service was formed, Florida law would govern contract formation. *Fridman*, 554 F. Supp. 3d at 1259 (finding Florida law governed contract formation dispute involving arbitration provision where the plaintiff was a Florida resident who accessed defendant's website and made purchases in Florida). Case law shows though that whether Florida, California, or New York law applies, a contract was formed including the Terms of Service which include the arbitration agreement.

Online agreements are generally classified into at least two types, clickwrap agreements and browsewrap agreements. *Valiente v. Nexgen Global, LLC*, No. 22-cv-22480-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 169829, *14 (S.D. Fla. Sep. 22, 2023); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012). A clickwrap agreement includes "when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." *Fridman*, 554 F. Supp. 3d at 1259 (citations omitted). A browsewrap agreement includes "when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgment during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id.*

Under Florida, California, and New York law, a browsewrap agreement is valid and enforceable if the purchaser had actual or constructive knowledge of the terms at issue. *Valiente*, 2023 U.S. Dist. LEXIS 169829, *15-16 (citing cases for the proposition under Florida and

California law); *Nguyen*, 763 F.3d at 1176-77 (collecting cases from various jurisdictions including cases applying California and New York law). If there is no evidence of actual knowledge, "the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Fridman*, 554 F. Supp. 3d at 1260 (quoting *Nguyen*, 763 F.3d at 1177). Courts analyze whether a website user is put on inquiry notice based on "the clarity and conspicuousness of the terms," which includes reviewing "the design and content of the relevant interface." *Fridman*, 554 F. Supp. 3d at 1260 (citation omitted); *Nguyen*, 763 F.3d at 1177 (citing *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 30-31 (2d Cir. 2002)).

Plaintiff was on at least constructive notice of the Terms of Service being included in his contract with Zeus. Directly below the button Plaintiff had to click to start his subscription was text stating he was agreeing to additional terms by clicking the button. Norman Decl ¶ 9, Ex. A. That text put him on notice of what he was agreeing to, and the underlined font of the additional terms indicated those terms were available as hyperlinks he could review. Whether Plaintiff actually reviewed the additional terms is irrelevant to his being on constructive notice of their inclusion and his manifestation of assent to their inclusion by clicking the "$5.99 / month Pay monthly" button. *See* Norman Decl. ¶¶ 7-9, Ex. A Courts that have reviewed similar facts have concluded such browsewrap agreements or modified clickwrap agreements are valid and enforceable. *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1189-90 (S.D. Fla. 2021) (finding hyperlink to additional terms directly below offer of insurance was clear and conspicuous and thus assented to when the plaintiff clicked to accept and citing similar cases); *Fteja*, 841 F. Supp. 2d at 838-40 (finding similar facts fell somewhere between a browsewrap and clickwrap agreement and were sufficient to put the user on notice and demonstrated manifestation of assent by clicking to accept); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 910-12 (N.D. Cal. 2011) (enforcing modified clickwrap agreement where user clicked an "Allow" button under which there was language agreeing to Terms of Service available at a hyperlink); *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC-KSC, 2014 U.S. Dist. LEXIS 156658, *8-9 (S.D. Cal. Nov. 5, 2014) (enforcing modified clickwrap agreement where language directly above a "Place Order" button included agreement to the Terms and Conditions available at a hyperlink).

Plaintiff assented to Zeus's Terms of Service and Privacy Policy when he subscribed to

Zeus. The Privacy Policy states Zeus "use[s] Vimeo OTT to power the Service and provide customer support." Norman Decl., Ex. C. at 2. The Zeus Terms of Service state they are between Plaintiff and Vimeo and "govern[] your use of the "**Vimeo OTT Service**," an online platform that allows consumers like you to view video programs ("**Programs**") from content owners and licensors ("**Producers**") through Producer-branded websites and applications that we power." Norman Decl., Ex. B at 1. Section 10.1 of the Zeus Terms of Service states "[t]he exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or your use of the Vimeo OTT Service shall be BINDING ARBITRATION administered by JAMS…" Norman Decl., Ex. B at 11. Section 10 also includes a class action waiver. Norman Decl., Ex. B. at 12. Section 11 states Producers, like Zeus, can enforce the terms of the agreement between Plaintiff and Vimeo. Norman Decl., Ex. B at 14. Section 10.7 states Producers can enforce the terms of the arbitration agreement "[t]o the extent that the Producer has agreed to resolve disputes with consumers through arbitration in its agreements with Vimeo." Norman Decl., Ex. B at 13. All of these terms demonstrate Zeus's website is powered by Vimeo OTT Service and disputes raised by Zeus's subscribers about Zeus's service powered by Vimeo's service are subject to arbitration. Plaintiff had notice of and agreed to these terms. Thus, a valid and enforceable arbitration agreement between Plaintiff and Zeus exists.

C. The Arbitration Agreement Encompasses Plaintiff's VPPA Claim

The second question is whether an arbitrable dispute exists. *Hilton*, 297 F. Supp. 3d at 1341 (citation omitted). Plaintiff's VPPA claim is encompassed within Zeus's Terms of Service which state "any dispute or claim arising out of or relating to this Agreement… or your use of the Vimeo OTT Service," which the Zeus website is powered by, is subject to arbitration. Norman Decl., Ex. B at 11 (section 10.1). Plaintiff's VPPA claim is further encompassed within Zeus's Terms of Service which state "any dispute with a Producer arising out of or relating to your purchase or viewing of a Producer's Program or subscription channel," is subject to arbitration. Norman Decl., Ex. B at 13 (section 10.7).

If Plaintiff disputes whether his claim is encompassed within the arbitration agreement because Zeus needs to show its agreement with Vimeo includes Plaintiff's claim, in further support of the fact that Zeus had an agreement with Vimeo that it could enforce the Terms of Service on Zeus's own website governing Plaintiff's use of the Vimeo OTT Service, Zeus

provides an invoice from Vimeo which states Zeus's relationship with Vimeo is subject to Vimeo's Enterprise Terms. Norman Decl. ¶ 12, Ex. D at 2. The Enterprise Terms currently available on Vimeo's website state they were last updated on March 7, 2023. Norman Decl. ¶ 13, Ex. E at 1. The Vimeo Enterprise Terms at Section 1 state "the products and services you order from us are governed by our standard Terms of Service, available at https://vimeo.com/terms, as modified by these Enterprise Terms." Norman Decl., Ex. E at 1. The Terms of Service currently posted on Vimeo's website state they were last updated on December 14, 2023. Norman Decl. ¶ 14, Ex. F at 1. This is after Plaintiff subscribed to a Zeus account in November 2023. Norman Decl. ¶ 14. The WayBack Machine, a website that provides access to archived versions of webpages, shows that on November 1, 2023, the Terms of Service on Vimeo's website stated they were last updated on September 1, 2022. Norman Norman Decl. ¶ 15, Ex. G at 1. These archived Terms of Service from Vimeo's website include an arbitration provision which states "The exclusive means of resolving any Covered Privacy Claim (defined below) shall be BINDING ARBITRATION." Norman Decl., Ex. G at 14 (section 11.3). It defines a "Covered Privacy Claim" as "any dispute or claim arising out of or relating to … (c) an alleged data breach or unauthorized disclosure of data or content." Norman Decl., Ex. G at 14 (section 11.3). Thus, the agreement between Zeus and Vimeo includes that Plaintiff's VPPA claim which alleges an unauthorized disclosure of his video viewing data or content is subject to arbitration.

D. The Arbitrator Decides the Arbitrability of this Dispute

"[T]he parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (citation omitted). "When 'an arbitration agreement contains a delegation provision -- committing to the arbitrator the threshold determination of whether the agreement to arbitration is enforceable -- the courts only retain jurisdiction to review a challenge to that specific provision.'" *Id.* The agreement to arbitrate arbitrability must be supported by clear and unmistakable evidence. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010). Plaintiff expressly agreed "[t]he arbitrator will decide all issues relating to the dispute, including the question of arbitrability, and can grant any relief that a court could grant." Norman Decl. Ex. B at 12 (section 10.2). This is clear and convincing evidence the parties agreed the arbitrator would decide threshold questions of arbitrability.

E. The Arbitration Agreement Is Not Unenforceable or Unconscionable

Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract..." 9 U.S.C. § 2. Fraud, duress, and unconscionability are general contract defenses. *Dale v. Comcast Corp.*, 498 F.3d 1216, 1219 (11th Cir. 2007). There is no state-law enforceability defense to invalidate the arbitration agreement. There are no allegations or evidence of fraud or duress. Nor are there allegations of unconscionability. The burden to prove unconscionability is on the party who "seeks to avoid enforcement of a requirement to proceed with arbitration. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1158-59 (Fla. 2014). Unconscionability under Florida law requires both procedural and substantive unconscionability. *Id.* Procedural unconscionability involves "the absence of meaningful choice," while substantive unconscionability involves the terms being shockingly and "unreasonably favorable to the other party." *Id.* Florida uses a sliding scale rule that requires both types of unconscionability be present but not necessarily to the same degree. *Id.* at 1159-60. The doctrine of unconscionability "is to be used with great caution." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003) (citation omitted). "One should not be permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it, or because, in retrospect, the bargain turns out to be disadvantageous." *Id.* at 288.

Procedural unconscionability is lacking. Plaintiff was put on notice he was agreeing to Zeus's Terms of Service and he had the opportunity to read them before agreeing. The video viewing service was a voluntary service Plaintiff could choose to subscribe to for entertainment purposes. There are other competing video viewing services available in the marketplace. This is not a situation where Plaintiff lacked alternative options or was otherwise required to purchase the service and lacked meaningful alternatives.

Substantive unconscionability is lacking. The provision delegating arbitrability to the arbitrator applies to both parties so it is not unreasonable or one-sided. The other terms, which need not be considered by the Court because of the delegation provision, are also mutually binding and call for a neutral arbitrator under JAMS rules.

Accordingly, there is nothing to suggest the arbitration provision is unconscionable and it should be enforced.

F. This Action Should Be Compelled to Arbitration and Dismissed

While Section 3 of the FAA states upon application by a party, "the court shall stay the trial of the action until the arbitration is complete," this "was not intended to limit dismissal of a case in the proper circumstances." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citing 9 U.S.C. § 3). "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id.* (citing cases) (emphasis in original). "The United States Court of Appeals for the Eleventh Circuit has not directly addressed this issue, but has frequently affirmed where the district court compelled arbitration and dismissed the underlying case." *Kozma v. Hunter Scott Fin., L.L.C.*, NO. 09-80502-CIV-MARRA/JOHNSON, 2010 U.S. Dist. LEXIS 16746, *6 (S.D. Fla. Feb. 25, 2010) (collecting cases). Because there is only one claim and it is subject to arbitration, this case should be compelled to arbitration and dismissed.

## III. CONCLUSION

For the foregoing reasons, Zeus respectfully requests the Court grant its Motion to Compel Arbitration, order Plaintiff's claim to arbitration, and dismiss the case.

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: February 29, 2024

*Todd Ehrenreich*

Todd R. Ehrenreich
FBN 945900
Todd.Ehrenreich@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
2 Alhambra Plaza, Suite 1110
Coral Gables, Florida 33134
Telephone: 786.353.0210
Facsimile: 786.513.2249

Jon P. Kardassakis
(*pro hac vice* forthcoming)
Jon.Kardassakis@lewisbrisbois.com
Danielle E. Stierna
(*pro hac vice* forthcoming)
Danielle.Stierna@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
213.250.1800

*Attorneys for Defendant, ZEUS NETWORKS, LLC*