**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:24-cv-20498-PCH**

ROGER TEJON, individually
and on behalf of all other similarly situated,

Plaintiff, **CLASS ACTION**

v.

ZEUS NETWORKS, LLC,

Defendant.
________________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**<u>DEFENDANT'S MOTION TO COMPEL ARBITRATION</u>**

Plaintiff Roger Tejon responds in opposition to Defendant's Motion to Compel Arbitration ("Mot." or "Motion"), [DE 5], and states:

## I. INTRODUCTION

Defendant seeks to compel arbitration of Plaintiff's class action claims on an individual basis pursuant to a form that did not conspicuously disclose to Plaintiff that he was agreeing to arbitration. The form at issue is depicted below:



Defendant cannot dispute that its form displayed the Terms of Service hyperlink *below* a bright red button and in light gray font (instead of a contrasting color) and failed to otherwise indicate the existence of a clickable hyperlink. As one court in this District recently put it, consumers are not required to "hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks." *Valiente v. Nexgen Glob., LLC*, No. 22-cv-22480-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 169829, at *26 (S.D. Fla. Sep. 22, 2023) (Altman, J.) (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022)).

Judge Altman's holding is consistent with other federal courts applying Florida and California (which Defendant concedes is the same) that have found similar online forms insufficient to place a reasonable consumer on notice. Plaintiff respectfully submits that this Court should follow this persuasive line of authority, particularly given Defendant's inability to cite a single case that compelled arbitration pursuant to a form like Defendant's.

## II. ARGUMENT

### A. <u>Legal Standard</u>

"Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so." *Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *4-5 (S.D. Fla. Aug. 12, 2021) (citing *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960))). "Under federal law, arbitration is a matter of consent, not coercion." *Fridman*, 2021 U.S. Dist. LEXIS 152553, at *5 (quoting *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008)).

"[T]he presumption of arbitrability 'does not apply to disputes concerning whether an agreement to arbitrate has been made.'" *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *6 (S.D. Fla. May 13, 2020) (quoting *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016) (quoting *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115-16 (11th Cir. 2014))). The Supreme Court recently reiterated this rule and rejected the claim that arbitration is broadly favored over litigation:

> Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation….***The federal policy is about treating arbitration contracts like all others, not about fostering arbitration***.

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1710 (2022) (emphasis supplied).

### B. Defendant Failed to Provide Conspicuous Notice of its Arbitration Provision

As Defendant correctly notes, Florida federal courts treat browsewrap and clickwrap agreements differently:

> "A 'clickwrap' agreement occurs when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions." [*MetroPCS Commc'ns, Inc. v. Porter,* 273 So. 3d 1025, 1028 (Fla. 3d DCA 2018)] (quoting [*Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017)]). "A 'browsewrap' agreement occurs when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions." *Id*. (quoting *Vitacost*, 210 So. 3d at 762). Courts generally enforce clickwrap agreements. *Vitacost*, 210 So. 3d at 762. Browsewrap agreements, however, "have only been enforced when the purchaser has actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *MetroPCS,* 273 So. 3d at 1028 (quoting *Vitacost*, 210 So. 3d at 762).

*Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273, at *15 (S.D. Fla. May 13, 2020).

The more a website's design diverges from a clickwrap agreement, "such as by placing the notice further away from the action button, cluttering the screen with potentially distracting content, or omitting the language explicitly saying that by performing action the user agrees to be bound by the terms—the less likely courts are to find that inquiry notice has been provided." *Anand v. Heath*, No. 19-CV-00016, 2019 U.S. Dist. LEXIS 109076, at *11-12 (N.D. Ill. June 28, 2019) (citing *Nicosia v. Amazon.com, Inc.,* No. 14-cv-4513, 384 F. Supp. 3d 254, 2019 U.S. Dist. LEXIS 100162, 2019 WL 2482674, at *8 (E.D.N.Y. June 14, 2019)).

In other words,

> [w]hen "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." Nguyen, 763 F3d at 1177. "Whether a reasonably prudent user is put on inquiry notice turns on the clarity and conspicuousness of [the] terms." *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 (S.D. Fla. 2020) (citations and quotations omitted). "***In the context of web-based contracts, clarity and conspicuousness are a function of the design and content of the relevant interface.***" *Id*. (citations and quotations omitted).

*Fridman v. 1-800 Contacts, Inc.*, No. 21-cv-21700-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 152553, at *13 (S.D. Fla. Aug. 12, 2021) (emphasis supplied).

Consistent with this approach, federal courts in Florida have enforced arbitration agreements contained within hyperlinks that were prominently displayed and *above* the action button. For example, in *Bell v. Royal Seas Cruises, Inc.*, the court found the following layout sufficiently conspicuous because the hyperlink was immediately above the "Continue" call-to-action button:




2021 U.S. Dist. LEXIS 152553, at *3, *18 ("The statement regarding the Terms and Conditions is located directly above the Continue button that the user must click to proceed with using the Website.").

Conversely, in *Goldstein v. Fandango Media, LLC*, Magistrate Judge Strauss, who authored *Bell v. Royal Seas Cruises, Inc.*, which was subsequently adopted by Judge Ruiz, denied a motion to compel arbitration based on the following disclosure:




No. 9:21-cv-80466-RAR, 2021 U.S. Dist. LEXIS 139153, at *3 (S.D. Fla. July 27, 2021).

In a thorough and well-reasoned opinion discussing Florida law on the formation of online contracts, the court in *Goldstein*, pursuant to the criteria outlined in *Bell*, held that "Fandango's notice is deficient because of its placement on the webpage and because the notice fails to alert the user of the arbitration agreement." *Id*. at *9. The court reasoned that "the inconspicuous appearance and poor placement of Fandango's notice negates its purportedly intended purpose. It is significant

that Fandango's notice regarding the binding nature of its Terms and Policies was placed ***beneath*** the large, orange, all-capitalized, COMPLETE MY PURCHASE click button, rather than above it." *Id*. (emphasis supplied) (citing *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 31-32 (2d Cir. 2002) (C.J. Sotomayor) (finding that a reasonably prudent person may not be aware of a notice of license terms below a download button); *Nguyen v. Barnes & Noble*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[C]lose proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.")).

Courts in this Circuit and others have applied these principles to deny motions to compel arbitration where the hyperlink containing the arbitration agreement was below the action button and/or not in a traditional hyperlink color (i.e., blue) as is the case here. For example, in *Johnson v. Whaleco*, Inc., Judge Presnell held that the following online disclosures was not sufficiently conspicuous because it did not contain any of the visual cues traditionally used to denote the existence of a hyperlink:



2023 U.S. Dist. LEXIS 184104, at *7-8 (M.D. Fla. Oct. 13, 2023) (Presnell, J.) ("Most damning to Defendant's attempt to enforce the Agreement is its use of a very light grey font against a white background[.]") (citations omitted).

Similarly, in *Valiente*, Judge Altman denied a motion to compel based on a white font hyperlink in part because it was below the action button and not in a traditional hyperlink color:




2023 U.S. Dist. LEXIS 169829, at *26 (S.D. Fla. Sep. 22, 2023).

In reaching his conclusions, Judge Altman relied on the Ninth Circuit's opinion in *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022). At issue in *Berman* was a disclosure more conspicuous than the one here. That disclosure placed the hyperlink and mandatory arbitration language immediately *above* a "continue" action button and immediately below the select gender inquiry. Accordingly, someone entering information into the form would have been required to answer the gender question then look down at the terms and conditions hyperlink and mandatory arbitration language before pressing the "continue" button as shown below:




*Id.* at Appendix B.

Notwithstanding, the Ninth Circuit held that the terms were not reasonably conspicuous:

> Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print. Because "online providers have complete control over the design of their websites," *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 289 Cal. Rptr. 3d 1, 16 (Ct. App. 2021), "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," *Nguyen*, 763 F.3d at 1179. The designer of the webpages at issue here did not take that obligation to heart.
>
> Second, while it is permissible to disclose terms and conditions through a hyperlink, the fact that a hyperlink is present must be

> readily apparent. Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists. *See Sellers*, 289 Cal. Rptr. 3d at 29. Because our inquiry notice standard demands conspicuousness tailored to the reasonably prudent Internet user, not to the expert user, the design of the hyperlinks must put such a user on notice of their existence. *Nguyen*, 763 F.3d at 1177, 1179.
>
> A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently "set apart" from the surrounding text. *Sellers*, 289 Cal. Rptr. 3d at 29.

*Id.* at 857.

Here, as in *Berman*, Defendant's online form fails to provide conspicuous notice of its arbitration provision and instead consists of a hyperlink to the Terms of Service *below* the action button and without any color to indicate that a hyperlink exists. As held by the Ninth Circuit, simply underlining the Terms of Service hyperlink is insufficient to ensure that website visitors are notified. The First and Second Circuits agree, noting that "[w]hile not all hyperlinks need to have the same characteristics, they are 'commonly blue and underlined.'" *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 63 (1st Cir. 2018) (quoting *CR Assocs. L.P. v. Sparefoot*, *Inc.*, No. 17-10551-LTS, 2018 U.S. Dist. LEXIS 26438, 2018 WL 988056, at *4 n.4 (D. Mass. Feb. 20, 2018); citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) ("[T]he hyperlinks are in blue and underlined."); *Adelson v. Harris*, 774 F.3d 803, 808 (2d Cir. 2014) ("[T]he hyperlinks were not hidden but visible in the customary manner, that is, by being embedded in blue, underlined text.")).

Consistent with the above cases, other district courts have found notice inquiry only where hyperlinks were presented to the consumer in a traditional hyperlink color. *See, e.g., Bold Ltd. v. Rocket Resume, Inc.*, No. 22-cv-01045, 2023 U.S. Dist. LEXIS 108212, at *10 (N.D. Cal. June 22, 2023) ("The words 'Terms of Use' and 'Privacy Policy' are in blue font and underlined"); *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1269 (M.D. Tenn.

2020) (hyperlinks noted through contrasting color and underlined); *Massel v. Successfulmatch.Com*, No. 23-cv-02389-PCP, 2024 U.S. Dist. LEXIS 33553, at *14-15 (N.D. Cal. Feb. 27, 2024) ("Because Millionaire Match's links were underlined but did not appear in a contrasting color, the Court must conclude, under *Berman*, that they were not reasonably conspicuous enough to put Mr. Massel on notice of the terms and that Mr. Massel therefore cannot be said to have assented to them….These distinctions may seem picayune, but website operators like Millionaire Match have ultimate control over their design decisions. Nothing requires them to present terms as subtle hyperlinks to separate pages instead of, say, requiring users to scroll through the actual terms before signing up.") (emphasis added).

Most recently, a court in the Northern District of Illinois held that even the following disclosures, while underscored, were insufficient to place a consumer on inquiry notice because the "gray font [] contrasts poorly with the background[]":




*Campos v. Tubi, Inc.*, No. 23-cv-3843, 2024 U.S. Dist. LEXIS 22247, at *4, (N.D. Ill. Feb. 8, 2024).

Consistent with this line of cases, no reasonably prudent consumer would have been placed on inquiry notice of Defendant's arbitration provision. As depicted above, Defendant's Terms of Service hyperlink is located *below* a bright red action button. The link is in small light gray font while the large red action distracts from the fine print. In all, the placement, coloring, and font sizes of Defendant's hyperlink were designed to distract a reasonable consumer from being placed on notice of what he/she was agreeing to. *See Fridman*, 2021 U.S. Dist. LEXIS 152553, at *20-21 ("As such, the Court finds that there is no valid agreement in this case, which would require that Plaintiff's claims must proceed through arbitration on an individual basis.").

The cases cited by Defendant in its brief, *see* Mot. at 8, undercut its argument and support Plaintiff's position. For example, *Arencibia v. AGA Serv. Co.*, involved a clickwrap agreement not a browsewrap agreement link the one at issue. *See* 533 F. Supp. 3d 1180, 1190 (S.D. Fla. 2021) ("Thus, Plaintiff was cautioned that clicking 'Yes, protect my trip for a total of [amount]' would indicate his acceptance to the 36-page Policy accessible via the hyperlink.") (citing *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304 (M.D. Fla. 2018)). In the other two cases cited by Defendant, the hyperlinks were designated in the traditional blue font. *See Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908 (N.D. Cal. 2011) ("By proceeding, you are allowing YoVille to access your information and you are agreeing to the [blue hyperlink] Facebook Terms of Service in your use of YoVille. By using YoVille, you also agree to the YoVille [blue hyperlink] Terms of Service."); *Crawford v. Beachbody, LLC*, No. 14cv1583-GPC(KSC), 2014 U.S. Dist. LEXIS 156658.at *2 (S.D. Cal. Nov. 5, 2014) (blue hyperlinks above call to action button)

In sum, Defendant fails to cite a single case that enforced an arbitration provision contained within a hyperlink that was presented to the consumer below the action button and with no color

to notify the consumer that a clickable link existed. The authorities on which Plaintiff relies are more persuasive and should, respectfully, result in denial of the Motion.

### C. Defendant's On-Line Form Fails to Describe and Incorporate the Collateral Arbitration Provision

In addition to failing to utilize the necessary visual cues to place Plaintiff on inquiry notice, Defendant's on-line form, in violation of Florida law, fails to specifically describe and incorporate the purported arbitration provision. In *Goldstein*, part of the court's reasoning for denying the motion to compel arbitration was based on the browsewrap agreement's failure to comply with Florida law with respect to the incorporation of collateral documents. *See* 2021 U.S. Dist. LEXIS 139153, at *10. Specifically, the court held in pertinent part:

> the language used in Fandango's browsewrap agreement is insufficient to place a reasonable user on notice that completing a purchase represents a waiver of the user's right to file a lawsuit compelling Fandango's appearance in court. In Florida, to incorporate a collateral document into an agreement, the agreement must: (1) specifically provide that the collateral document is being incorporated; and (2) sufficiently describe the collateral document being incorporated….Here, Fandango's Arbitration Agreement is a collateral document, but Fandango's notice does not sufficiently describe it so that the user is on notice of the mandatory arbitration provision, nor does Fandango specifically advise the user that an agreement to arbitrate is being incorporated into its Terms and Policies.

*Id*. (citing *Vitacost.com, Inc. v. Mccants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017) ("Florida law requires the agreement to specifically provide that the collateral document is being incorporated and to sufficiently describe the collateral document to be incorporated….The seller's webpages failed to advise the plaintiff that his purchase was subject to the terms and conditions of the sale and did not put him on inquiry notice of the arbitration provision.") (citing *Herman v. Seaworld Parks & Entertainment, Inc.*, 2016 U.S. Dist. LEXIS 181173, 2016 WL 7447555 (Fla. M.D. Aug.

26, 2016); *BGT Grp., Inc. v. Tradewinds Engine Servs.*, LLC, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011)).

In *Whaleco*, Judge Presnell agreed with this requirement and denied a motion to compel arbitration for failure to describe and incorporate the arbitration provision. *See* 2023 U.S. Dist. LEXIS 184104, at *9-10 ("Therefore, Plaintiff was not put on notice to the Agreement with Defendant and cannot be compelled to arbitrate this dispute.") (citing *Vitacost.com, Inc.*, 210 So.3d at 764-65; *Royal Seas*, 2020 U.S. Dist. LEXIS 85273, 2020 WL 5742189 at *7 (finding notice sufficient where the statement *included* explicit notice of mandatory arbitration)).

Like the disclosures in *Whaleco* and *Goldstein*, Defendant's website, in violation of Florida law, fails to describe and incorporate the arbitration agreement, which is a collateral document. The website makes reference to Defendant's Terms of Service but says nothing about the arbitration clause Defendant seeks to enforce. Under Florida law, the failure to specifically describe and incorporate the collateral arbitration agreement means that Plaintiff was never placed on notice of the agreement – notwithstanding any arguments by Defendant regarding the conspicuousness of the disclosures – and, therefore, the arbitration agreement is unenforceable.

## III. CONCLUSION

Defendant has not demonstrated the existence of an enforceable arbitration agreement and its Motion should therefore be denied.

**WHEREFORE**, Plaintiff respectfully request an Order denying Defendant's Motion and for such other relief deemed appropriate.

Date: March 6, 2024

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*

Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com