UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

| | |
|---|---|
| ROGER TEJON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZEUS NETWORKS, LLC,<br><br>Defendant. | Action No.: 1:24-CV-20498<br><br>Honorable Paul C. Huck |

**DEFENDANT ZEUS NETWORKS, LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

## I. INTRODUCTION

Plaintiff opposes the Motion to Compel Arbitration on only two grounds. First, Plaintiff argues the subscription page does not provide adequate notice of the Terms of Service, which has the arbitration provision. Opp. at 3-12. Second, Plaintiff argues the subscription page does not incorporate the Terms of Service. Opp. at 12-13. Plaintiff does not dispute any of the facts provided in the Motion to Compel Arbitration. Case law is clear that additional terms in a hyperlink that is directly above or below an action button, with language indicating clicking the button also includes assenting to the additional terms, creates an enforceable agreement. Zeus's Motion to Compel Arbitration should be granted.

## II. THE COURT SHOULD COMPEL ARBITRATION

### A. Plaintiff Was on Inquiry Notice Because the Subscription Page Included Clear and Conspicuous Notice of the Terms of Service, Creating A Valid and Enforceable Written Arbitration Agreement

Plaintiff's argument is that he was not provided sufficient notice that the Terms of Service and Privacy Policy were part of his contract with Zeus because that was underneath the button he had to click to subscribe and not in blue font. Opp. at 3-12. Contrary to Plaintiff's argument, these facts do not preclude finding Plaintiff was put on constructive notice and agreed to the incorporation of the Terms of Service when he subscribed, because courts have enforced

arbitration provisions in similar circumstances.

The decision in *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 (S.D. Fla. 2021), shows language below a feature to be clicked that indicates clicking includes acceptance of additional terms is sufficient to establish assent to those terms through inquiry notice. "Indeed, 'on the cusp of the third decade of the twenty-first century it can fairly be said that following a hyperlink is like turning a page in a printed document. Any reasonable viewer would realize that access to the text of the terms would be simple and immediate.'" *Arencibia*, 533 F. Supp. 3d at 1190 n.5 (citation omitted).

Plaintiff cites *Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752-RUIZ/STRAUSS, 2020 U.S. Dist. LEXIS 85273 (S.D. Fla. May 13, 2020), but this case supports Zeus's position. Opp. at 4-5. That court found the website put a reasonable user on constructive notice they were agreeing to the Terms & Conditions. *Bell*, 2020 U.S. Dist. LEXIS 85273, *18-21. The Terms & Conditions hyperlink in *Bell* was not in blue font, it was only underlined like the Terms of Service at issue here. *Id.* at *3; Norman Decl. ¶ 9, Ex. A. The three points the *Bell* court focused on in its analysis were first whether the statement regarding the Terms and Conditions were "tuck[ed] away … in an obscure corner of the Website where a user is unlikely to encounter them." *Id.* at *19. Second, the *Bell* court noted the language which began with "I understand and agree," put a reasonable user on notice that they were agreeing to be bound by the Terms and Conditions rather than merely alerting the user that they exist. *Id.* at *19-20. Third, the *Bell* court noted that while a user did not need to check a box stating they agreed to the Terms and Conditions and were not told that clicking a "Continue" button was a manifestation of assent to the terms, the placement of the statement regarding agreement to the Terms and Conditions was directly above the button they did have to click to continue, suggesting a connection between the two. *Id.* at *20-21. All three of these factors support finding Plaintiff agreed to the Terms of Service here. The hyperlink to the Terms of Service was not tucked away at the bottom of the page. The language that included the hyperlink to the Terms of Service made it clear the user was agreeing to be bound: "By subscribing, you agree to our Terms of Service…" Norman Decl. ¶ 9, Ex. A. Finally, the language alerting a user to their agreement to the Terms of Service was directly below the buttons they had to click to subscribe. Norman Decl. ¶ 9, Ex. A. Thus, *Bell* supports finding the Terms of Service were sufficiently conspicuous as to put a user on inquiry notice and therefore enforceable.

Contrary to Plaintiff's assertion (Opp. at 5), *Goldstein v. Fandango Media, LLC*, No. 9:21-cv-80466-RAR, 2021 U.S. Dist. LEXIS 139153 (S.D. Fla. July 27, 2023), was authored by Magistrate Judge Bruce Reinhart, not Magistrate Judge Jared M. Strauss. The facts before Judge Reinhart in *Goldstein* were materially different from the facts in *Bell* in that the plaintiff in *Goldstein* argued "once he clicked to complete his purchase, there was no reason for [him] to continue scrolling down the page to view the purported arbitration language at issue." *Goldstein*, 2021 U.S. Dist. LEXIS 139153, *3. The plaintiff also provided a declaration stating he "did not scroll down to review the remainder of the page…" *Id.* In citing to Judge Strauss's opinion in *Bell*, Judge Reinhart focused on points Judge Strauss did not, no doubt in part because of the difference in facts. For example, Judge Reinhart noted the *Bell* court found "the website placed the notice of its Terms and Conditions 'directly above' the Continue button and did not 'tuck away' the notice." *Goldstein*, 2021 U.S. Dist. LEXIS 139153, *7-8. The *Goldstein* court likely found this significant because the plaintiff declared he did not scroll past the COMPLETE MY PURCHASE button to see the language below including agreement to the Terms and Policies. *Goldstein*, 2020 U.S. Dist. LEXIS 139153, *9. Plaintiff here provides no such declaration. There is no declaration claiming Plaintiff did not see the entirety of the language regarding the subscription, including his agreement to the Terms of Service, when he subscribed through the app on his iPhone or iPad device. Norman Decl. ¶¶ 7, 9, Ex. A.

Judge Reinhart thought Judge Strauss "highlighted the significance that the notice specifically advised the user that the Terms and Conditions included a mandatory arbitration provision; thus, the notice did not merely inform the user that the unspecified terms and conditions existed." *Goldstein*, 2021 U.S. Dist. LEXIS 139153, *8. However, only the latter half of the sentence is accurate. "Second, rather than simply having a link that informs the user that Terms and Conditions merely exist, the short sentence regarding the applicability of terms and conditions specifically starts off by stating 'I understand and agree.'" *Bell*, 2020 U.S. Dist. LEXIS 85273, *19. There was no focus on the reference to the terms and conditions including an arbitration provision when considering whether the user was on notice they were agreeing to the terms and conditions.

As for Plaintiff's reference to *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (Opp. at 6), the court found plaintiffs did not accept defendant's license terms where "reference to [defendant's] license terms were hidden below the 'Download' button on the next

screen." Here, there is no issue about a next screen needing to be accessed to see the incorporation by reference of the Terms of Service directly beneath the subscription buttons. Norman Decl., Ex. A.

Plaintiff's reference to *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171 (9th Cir. 2014), is misleading as to its relevance here as shown through review of the whole sentence of which Plaintiff only quotes part. Opp. at 6.

> In light of the lack of controlling authority on point, and in keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice.

*Nguyen*, 763 F.3d at 1178-79. The Terms of Service were available directly beneath the subscription buttons, not buried at the bottom of the webpage, and include language putting the user on notice he was agreeing to the additional terms available at the hyperlink evidenced through the underlining of the text.

*Johnson v. Whaleco., Inc.*, No. 5:23-cv-403-GAP-PRL, 2023 U.S. Dist. LEXIS 184104 (M.D. Fla. Oct. 13, 2023), is distinguishable and Plaintiff's partial quote from the case regarding underlining hyperlinks is misleading compared to the facts here. Opp. at 6-7. The quote in full is: "Most damning to Defendant's attempt to enforce the Agreement is its use of a very light grey font against a white background, devoid of underlined text or any conspicuous visual cues." *Johnson*, 2023 U.S. Dist. LEXIS 184104, *7-8. The court noted the placement of the text on the page was poor because "the faint text linking to Defendant's browsewrap agreement is located at the bottom of the webpage beneath four other buttons and far below the bright-orange 'Continue' button." *Id.* at *9. Unlike *Johnson*, the Terms of Service are underlined on the Zeus subscription screen and there is nothing between the text with the hyperlink and the subscription buttons. Norman Decl., Ex. A.

*Valiente v. Nexgen Global, LLC*, No. 22-cv-22480-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 169829 (S.D. Fla. Sep. 22, 2023), is distinguishable. Opp. at 7. The relevant Terms-of-Use hyperlink was at the bottom of the page in the footer and "*nowhere near* the 'Go To Step #2' button." *Valiente v. Nexgen Global, LLC*, 2023 U.S. Dist. LEXIS 169829, *21-22 (emphasis in

original).

Plaintiff cites *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) (Opp. at 7-9), but it is distinguishable. The court found the terms and conditions hyperlink was not conspicuous because "[i]t is printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye. The comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Berman*, 30 F.4th at 856-57. The font at issue here on the subscription screen is the same color and mostly the same size except for the title of the screen and the amount of money required for a subscription. Norman Decl., Ex. A. Unlike *Berman*, the page is not designed to "draw the user's attention away from the most important part of the page." *Berman*, 30 F.4th at 857.

Contrary to Plaintiff's assertion, *Campos v. Tubi, Inc.*, No. 23-cv-3843, 2024 U.S. Dist. LEXIS 22247 (N.D. Ill. Feb. 8, 2024), did not find the disclosures insufficient merely because the font color was gray and contrasted poorly with the background. Opp. at 10. The court considered "all the relevant circumstances," which included "the Prompt is in the smallest font on the screen, and it is very nearly at the bottom," the poor font contrast, a user does not need to scroll to the bottom so as to see it, "the Prompt on the first screen is not spatially coupled with any mechanism for manifesting assent," and the language relates to "registering" with no information on how to register on the screen. *Campos*, 2024 U.S. Dist. LEXIS 22247, *9-10. The language on the Zeus subscription screen is the same color, consistent in its reference to subscribing, and places the Terms of Use hyperlink directly below the buttons to be clicked to subscribe. Norman Decl., Ex. A.

Plaintiff argues no case Zeus cited in its moving papers "enforced an arbitration provision contained within a hyperlink that was presented to the consumer below the action button and with no color to notify the consumer that a clickable link existed." Opp. at 11-12. But Zeus did cite a case where the language with the underlined hyperlink to additional terms was below the action button and enforced, it just was not about enforcing an arbitration provision but a choice of forum provision. Mot. at 8 (citing *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 838-40 (S.D.N.Y. 2012)). The facts that supported enforcing the additional terms at the hyperlink included:

> The following sentence appears immediately below that button: "By clicking

> Sign Up, you are indicating that you have read and agree to the Terms of Service." That phrase "Terms of Service" is underlined, an indication that the phrase is a hyperlink, a phrase that is "usually highlighted or underlined" and "sends users who click on it directly to a new location—usually an internet address or a program of some sort."

*Fteja*, 841 F. Supp. 2d at 835 (quoting *United States v. Hair*, 178 F. App'x 879, 882 n.3 (11th Cir. 2006)). This shows the Eleventh Circuit was familiar with the fact that hyperlinks can be underlined or differed colors even back in 2006. The Southern District of New York found these similar facts sufficient: "Fteja was informed of the consequence of his assenting click and he was shown, immediately below, where to click to understand those consequences. That was enough." *Fteja*, 841 F. Supp. 2d at 840. This case is directly on point.

Plaintiff's focus on individual pieces of the user interface out of context from the information on the relevant screen page is not supported by the cases cited by either party. The above shows the courts analyzed all the relevant circumstances before determining whether the notice was conspicuous and put a user on inquiry notice. The undisputed facts show Plaintiff was put on inquiry notice and assented to the Terms of Service when he subscribed to a Zeus account.

B. Browsewrap Agreements Incorporate Collateral Documents If the User Is Put on Inquiry Notice

Incorporation by reference under Florida law requires "the agreement must: (1) specifically provide that the collateral document is being incorporated; and (2) sufficiently describe the collateral document being incorporated." *Goldstein*, 2021 U.S. Dist. LEXIS 139153, *10 (citing *Vitacost.com, Inc. v. Mccants*, 210 So.3d 761, 764-65 (Fla. 4th DCA 2017)). As discussed above, the court in *Goldstein* thought the court in *Bell* focused on the incorporation by reference language calling out the existence of an arbitration provision, but this was not the basis of the analysis in relation to the hyperlink with additional terms being sufficient to put a user on inquiry notice. While the court in *Vitacost.com* also cited this doctrine, it found "none of the webpages made the plaintiff's purchase subject to the 'terms and conditions,'" which were available at the bottom of the webpages. *Vitacost.com*, 210 So.3d at 765. As discussed above, this issue does not apply here because the hyperlink to the Terms of Service was directly below the subscription buttons. The court in *Vitacost.com* cited *BGT Grp., Inc. v. Tradewinds Engine Servs., LLC*, 62 So.3d 1192, 1194 (Fla. 4th DCA 2011). *Vitacost.com*, 210 So.3d at 764-65. In *BGT Grp., Inc.*, the court noted "cases finding sufficient description of a collateral document to

create an incorporation by reference involve more detailed descriptions of the collateral document, or where the document could be found." *BGT Grp., Inc.*, 62 So.3d at 1195. This is why a collateral document that can be found at a hyperlink can be incorporated by reference as long as the user is put on inquiry notice of its existence and assents to it. *Id.*; *Fridman v. 1-800 Contacts, Inc.*, 554 F. Supp. 3d 1252, 1260 (S.D. Fla. 2021). The *BGT Grp., Inc.* court even noted a case where a warranty that was referenced but not attached to a purchase agreement was nonetheless incorporated by reference because the agreement stated the warranty was available for inspection upon request. *BGT Grp., Inc.*, 62 So.3d at 1195. Agreements to arbitrate are supposed to be analyzed under the same standard as other contracts. "Congress enacted the FAA to reverse longstanding judicial hostility toward arbitration agreements and to place them on the same footing as other contracts." *Herman v. SeaWorld Parks & Entm't, Inc.*, No. 8:14-cv-3028-T-35JSS, 2016 U.S. Dist. LEXIS 181173, *5-6 (M.D. Fla. Aug. 26, 2016) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)).

Additional cases where Florida courts did not separately consider whether language incorporating additional terms available at a hyperlink called out the existence of an arbitration support finding this issue is not relevant here. In *MetroPCS Communs., Inc. v. Porter*, 273 So.3d 1025, 1027-29 (Fla. 3d DCA 2018), the court found pre-litigation text messages that ended with "Terms&Conditions apply," where the "Terms&Conditions" was a link, provided adequate notice to the plaintiff that he was agreeing to those terms which were enforceable. The fact that the plaintiff chose not to read them was irrelevant, as was the fact that the pre-litigation text messages did not mention arbitration. *MetroPCS Communs.*, 273 So.3d at 1027-29. "[A] person has no right to shut his eyes or ear to avoid information, and then say he has no notice." *Id.* (quoting *Sapp v. Warner*, 141 So. 124, 127 (Fla. 1932)). The court in *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1304-05 (M.D. Fla. 2018), reached a similar conclusion without addressing whether the notice specifically mentioned arbitration. "The Terms and Conditions hyperlink was placed in a manner conspicuous enough to provide reasonable notice to a prudent user, thereby requiring the user to affirmatively acknowledge the Terms and Conditions Hyperlink to the Agreement before proceeding. Because the website provided reasonable notice of the Agreement, it is enforceable." *Temple*, 360 F. Supp. 3d at 1305.

Because Plaintiff does not oppose any other portion of the Motion, any arguments related to other portions of the Motion should be deemed waived. *Fla. Atl. Univ. Bd. of Trs. v. Parsont*,

465 F. Supp. 3d 1279, 1294-95 (S.D. Fla. 2020) (citing cases).

## III. CONCLUSION

For the foregoing reasons, Zeus respectfully requests the Court grant its Motion to Compel Arbitration, order Plaintiff's claim to arbitration, and dismiss the case.

Dated: March 13, 2024

*/s/ Todd R. Ehrenreich*
Todd R. Ehrenreich
FBN 945900
Todd.Ehrenreich@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
2 Alhambra Plaza, Suite 1110
Coral Gables, Florida 33134
Telephone: 786.353.0210
Facsimile: 786.513.2249

Jon P. Kardassakis
(application for *pro hac vice* forthcoming)
Jon.Kardassakis@lewisbrisbois.com
Danielle E. Stierna
(application for *pro hac vice* forthcoming)
Danielle.Stierna@lewisbrisbois.com
LEWIS BRISBOIS BISGAARD &
SMITH LLP
633 West 5th Street, Suite 4000
Los Angeles, California 90071
213.250.1800

*Attorneys for Defendant, ZEUS NETWORKS, LLC*