UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 24-cv-20498-PCH

**ROGER TEJON,** individually and
on behalf of other similarly situated,

       Plaintiff,

vs.

**ZEUS NETWORKS, LLC**,

       Defendant.

_____/

## ORDER

THIS CAUSE is before the Court upon Defendant Zeus Networks, LLC's ("Zeus") Motion to

Compel Arbitration and Dismiss ("Motion") [ECF No. 5], Plaintiff's Response in Opposition to

Motion to Compel Arbitration and Dismiss ("Response") [ECF No. 7], and Zeus' Reply in Support

of Its Motion to Compel Arbitration and Dismiss ("Reply") [ECF No. 13].  Zeus argues that the

Court should compel arbitration pursuant to the arbitration provision in the online contract from

which this dispute arises and dismiss Plaintiff's claims.  Plaintiff responds that the arbitration

provision is unenforceable because Defendant's webpage fails to provide conspicuous notice of

the arbitration provision.  The Court has carefully reviewed the parties' filings, the record, and the

applicable law.  For the reasons discussed below, Zeus' Motion is due to be **DENIED**.

### I.      BACKGROUND

Zeus operates a website that offers prerecorded videos to individuals who subscribe to its

services.  Complaint at ¶ 17 [ECF No. 1].  This audio-visual content is a main part of Zeus'

business, and Plaintiff subscribed to these services by registering for an account and providing

personal identifying information.  *See id.* at ¶ 17–19.  Plaintiff, who viewed videos from Zeus'

website while logged into his Facebook account, claims that Zeus disclosed his viewing history and Facebook ID number to Facebook without his consent. *Id.* at ¶ 23, 30–31. Consequently, Plaintiff filed this class action complaint against Zeus, alleging violations of the Video Privacy Protection Act. *Id.* at ¶ 1. Zeus filed its Motion soon thereafter.

Zeus argues that Plaintiff's claims "must be resolved through individual arbitration pursuant to the Terms of Service he affirmatively assented to when he subscribed to a Zeus account." Motion at 5. The top of Zeus' subscription webpage states, "[c]hoose your plan" in large white font, and there is a smaller gray font immediately below describing the unlimited access that a subscription provides.[1] *See* Declaration of Shane Norman in Support of Defendant Zeus Networks, LLC's Motion to Compel Arbitration [ECF No. 6, Ex. A]. In the center of the webpage are two bright red buttons labeled "$59.99 / year" and "$5.99 / month" in white, bolded font. *Id.* Directly below these red buttons is a notice in the smaller gray font that states, "[b]y subscribing, you agree to our Terms of Service & Privacy Policy, and represent that you are at least 16 years of age." *Id.* The phrases "Terms of Service" and "Privacy Policy" are underlined hyperlinks, with "Terms of Service" bringing the user to another page that contains an arbitration provision that states, "the exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), or your use of Vimeo OTT Service shall be BINDING ARBITRATION administered by JAMS . . . ." [ECF No. 6, Ex. B]. Finally, there is an additional paragraph in the same small, gray font, immediately below the hyperlinks, explaining the auto-renewal payment structure of the subscription. *Id.* An undisputed visual representation is provided below:

---

[1] In assessing this Motion, the Court may consider the attached exhibits. *MarketSource, Inc. v. Fernandez*, 2022 WL 18464969, at *3 (S.D. Fla. Sept. 27, 2022) ("[O]n a motion to compel arbitration, like a Rule 12(b)(1) motion, the Court may consider factual matters outside the pleadings.") (citation omitted).



## II.   LEGAL STANDARD

Whether an order should proceed to arbitration "is a matter of contract and of consent." *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018).  "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). "Where the parties have agreed to arbitrate their dispute, the job of the court — indeed, the obligation — is to enforce that agreement." *JPay*, 904 F.3d at 929.

Agreements to arbitrate are enforced pursuant to the Federal Arbitration Act ("FAA").  *See Circuit City Stores, Inc. v. Sant Clair Adams*, 532 U.S. 105, 111 (2001) ("[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements.").   "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  However, "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412 (2022).  "The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017) (citations omitted).

### III.    DISCUSSION

Defendant argues that the arbitration provision at issue is enforceable because Plaintiff was on at least inquiry notice of the Terms of Service, including the arbitration provision therein.  *See* Motion at 8.  Specifically, Defendant argues that inquiry notice is provided by the small gray font below the subscription buttons stating that the user agreed to additional terms by subscribing, and "the underlined font of the additional terms indicated those terms were available as hyperlinks [Plaintiff] could review."  Motion at 8.  In response, Plaintiff argues that the hyperlink is inconspicuous when comparing its location, size, and color to the rest of the subscription page.  *See* Response at 11.  The Court agrees with Plaintiff.

The law recognizes two types of internet agreements: clickwrap agreements and browsewrap agreements.  *See Goldstein v. Fandango Media, LLC*, 2021 WL 6617447, at *2 (S.D. Fla. July 27, 2021) (citations omitted).  "A browsewrap agreement occurs when a website provides a link to the terms and conditions but does not require the user to click a separate acknowledgment checkbox before continuing."  *Id.*  The agreement here is a form of a browsewrap agreement because it provides a link to a separate webpage with terms and conditions and does not require the user to click an acknowledgment checkbox.   To be enforceable, a hyperlink to a browsewrap agreement must be conspicuous enough to put a reasonably prudent person on inquiry notice of the terms and

conditions therein. *See id.* Although this is a case-specific inquiry, courts commonly consider the following factors when analyzing browsewrap agreements: color, size, positioning, language, and design of the hyperlink and its accompanying text. *See, e.g.*, *Kravets v. Anthropologie, Inc.*, 2022 WL 1978712, at *4 (S.D. Fla. June 6, 2022); *Goldstein*, 2021 WL 6617447, at *3.

In this case, the factors weigh in favor of finding that the hyperlink and related text fail to provide inquiry notice. First, it is generally recognized that hyperlinks are usually displayed in a blue font, as a means to stand out from the rest of the page. *See, e.g.*, *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters . . . ."). Here, the hyperlinks and related text are both in light gray font, not blue, and the hyperlinks are underlined but not displayed in all capital letters. Merely underlining the hyperlinks, without more, does not provide sufficient contrast from the other gray font of identical size and capitalization on the webpage and black background. Moreover, the hyperlinks are placed beneath, rather than above, the two large bright red subscription buttons containing the monthly and annual subscription options in larger, bolded font. Under these circumstances, a reasonable user would not be on inquiry notice that there were hyperlinks on Zeus' subscription webpage containing important terms and conditions that the user should click.

Additionally, the language of the hyperlink and related text could lead a reasonably prudent person to conclude that by subscribing, they agree to the additional terms on the same subscription page, rather than on a separate linked page. The text states that "[b]y subscribing, you agree to our Terms of Service & Privacy Policy and represent that you are at least 16 years of age." Just below this text is a paragraph in the same small, gray font explaining specific payment details of the subscription. This placement of the hyperlinks beneath such highly conspicuous action

buttons—as well as the language after the hyperlinks regarding specific payment details and the age of the user—would lead a reasonably prudent person to think that this very webpage contains the terms and conditions of the subscription, not a separate webpage.  In other words, the factors described above suggest to a user that once they subscribe and read the language underneath the subscription buttons, the user has considered all relevant conditions to the subscription, and the subscription process is over.  This is the opposite of putting a user on inquiry notice of an arbitration provision located on a separate page via hyperlink.

In its Motion, Defendant relies on *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180 (S.D. Fla. 2021) to support its argument that the hyperlink below subscription buttons provides inquiry notice.  Motion at 8.  The *Arencibia* court found that a bold blue hyperlink, located just below to options to purchase travel insurance, provided sufficient inquiry notice.  *See* 533 F. Supp. 3d at 1190.  The fact that the webpage design was "not layered to the point of being excessively cumbersome or confusing" was also important to the *Arencibia* court's analysis.  *See id.* n.5.

Zeus' webpage is readily distinguishable from the webpage in *Arencibia*.  Unlike *Arencibia*, Zeus did not sufficiently bold, enlarge, or display its hyperlinks in the usual blue font.  Additionally, the text of the action buttons in *Arencibia* was the same size as the hyperlink text just below them; here, the hyperlink text is in a small, light gray font, overshadowed by the large, bright red action buttons above them.  *See id.* at 1190.  There is also no allegation that Plaintiff was sent a full copy of the Terms of Service after he purchased the subscription with time to cancel or refund if he was dissatisfied.  *See Arencibia v. AGA Serv. Co.*, 2022 WL 1499693, at \*4 (11th Cir. May 12, 2022) ("In addition, [the purchaser] does not deny that he received a full copy of the Policy shortly after his purchase and that he had ten days in which to review the Policy and cancel it for a full refund if he was dissatisfied for any reason.")  In summary, for the reasons described

above, Zeus' webpage design is not sufficiently informative to lead a reasonable user to believe that additional steps must be taken to view additional terms and conditions on a separate web page, unlike the webpage design in *Arencibia*.

Thus, under the circumstances of this case, the Court finds that a reasonably prudent person would not be on inquiry notice of the arbitration provision at issue, rendering the provision unenforceable.

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Compel Arbitration **[ECF No. 5]** is **DENIED.**

**DONE AND ORDERED** in Miami, Florida, March 25, 2024.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Cc:     All counsel of record